## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| GINA and JOSEPH PARRISH, | Civil Action No. 3:11-cv-03502-JFA |
| Plaintiffs, | **ORIGINAL COMPLAINT** |
| GC SERVICES LIMITED PARTNERSHIP, DLS ENTERPRISES, INC, and GC FINANCIAL CORP., | |
| Defendants. | **JURY TRIAL DEMAND** |

### NATURE OF ACTION

1.     This is an action brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

### JURISDICTION AND VENUE

2.     This Court has jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

3.     Venue is proper before this Court pursuant to 28 U.S.C. §1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this State and this district, where Plaintiff resides in this State and district, and where Defendants transact business in this State and this district.

### PARTIES

4.     Plaintiff Gina Parrish ("Ms. Parrish") is a natural person who at all relevant times resided at Shaw Air Force Base, South Carolina.

5.     Plaintiff Joseph Parrish ("Mr. Parrish") is a natural person who at all relevant times resided at Shaw Air Force Base, South Carolina.

6.     Ms. Parrish is a "consumer" as defined by 15 U.S.C. § 1692a(3).

7.     Mr. Parrish is a "consumer" as defined by 15 U.S.C. § 1692a(3).

8.     Defendant GC Services Limited Partnership ("GC Services") is a foreign limited partnership formed under the laws of Delaware.  GC Services is registered to do, and doing, business in this district.  GC Services' principal office and place of business is situated at 6330 Gulfton St., Houston, TX 77081-1108.  GC Services is an entity that at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. §1692a(5).  GC Services may be served by and through its registered agent, CT Corporation 350 N. St. Paul St., Ste. 2900, Dallas, TX 75201-4234.

9.     GC Services is the largest private collection agency in North America, operating thirty-six (36) offices, employing more than 10,000 individuals, and managing over 8.5 million open third-party debt collection accounts.

10.     Defendant GC Financial Corp. ("GC Financial") is a foreign for-profit corporation and the general partner of GC Services Limited Partnership.  GC Financial is registered to do, and doing, business in this district.  GC Financial's principal office and principal place of business is situated at 6330 Gulfton St., Houston, TX 77081.  GC Financial may be served by and through its registered agent, CT Corporation 350 N. St. Paul St., Ste. 2900, Dallas, TX 75201-4234.

11.     Defendant DLS Enterprises, Inc. ("DLS"), doing business under the assumed fictitious name GC Services Corp., is a foreign for-profit corporation and the general partner of GC Services.  DLS is registered to do, and doing, business in this district.  DLS's principal

place of business and principal office is situated at 6330 Gulfton St., Houston, TX 77081. DLS may be served by and through its registered agent, CT Corporation 350 N. St. Paul St., Ste. 2900, Dallas, TX 75201-4234.

12.     GC Financial and DLS shall be referred to hereafter as the "General Partners."

13.     Under Delaware partnership law and the Uniform Limited Partnership Act §403 (amended 1985), the General Partners are vicariously liable for the acts of GC Services, the limited partnership.  Delaware partnership law provides that "all partners are liable . . . [j]ointly and severally for everything chargeable to the partnership. . . ."  Del. Code. Ann. tit. 6, §1515(a).  GC Services mails hundreds of thousands of collection letters and places hundreds of thousands of collection telephone calls per month in its third party collection program, which is clearly within the scope the partnership's business.  Accordingly, the General Partners are jointly and severally liable for the acts and omissions of GC Services out of which Plaintiff's claims arise.  *See e.g. Randle v. GC Services, LP*, 25 F.Supp.2d 849, 851-52 (finding that the general partners of GC Services Limited Partnership — GC Financial Corp., and DLS Enterprises, Inc., are vicariously liable for the acts of GC Services under general principles of partnership law and Delaware partnership law). *See also Peters v. AT&T Corp.*, 43 F.Supp.2d. 926, 929 (N.D. Ill. 1999) (same).

14.     Accordingly, GC Services, GC Financial, and DLS are "debt collectors" as defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

15.     Ms. Parrish is a natural person obligated, or allegedly obligated, to pay a debt owed or due, or asserted to be owed or due a creditor other than GC Services, GC Financial, and/or DLS.

16.     Ms. Parrish's obligation, or alleged obligation, owed or due, or asserted to be owed or due a creditor other than GC Services, GC Financial, and/or DLS, arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes.

17.     Ms. Parrish's alleged obligation arises from a personal student loan allegedly owed by Ms. Parrish.

18.     GC Services uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, and/or regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due another.

19.      In connection with collection of an alleged debt in default, GC Services called Ms. Parrish's brother, Timothy R. Hinkle, on multiple occasions in June 2011, in an attempt to obtain location information for Ms. Parrish.

20.     On at least one occasion, GC Services informed Timothy R. Hinkle that GC Services was a debt collector calling in connection with a debt owed by his sister, Ms. Parrish.

21.     In connection with collection of an alleged debt in default, GC Services called Ms. Parrish's son, Mr. Parrish, on multiple occasions in June 2011, in an attempt to obtain location information for Ms. Parrish.

22.     On at least one occasion, GC Services informed Mr. Parrish that GC Services was a debt collector calling in connection with a debt owed by his mother, Ms. Parrish.

23.     Upon receipt of GC Services' telephone calls, Mr. Parrish informed GC Services that the telephone number no longer belonged to his mother and that it was his cellular telephone number.

24.     Mr. Parrish further informed GC Services that it was to cease contacting his cellular telephone number and demanded GC Services remove the telephone number from any records.

25.     Despite Mr. Parrish's demand to cease contacting him, GC Services continued to contact Mr. Parrish regarding Ms. Parrish's alleged debt.

26.     GC Services called Ms. Parrish's cellular telephone on or about July 1, 2011, and at such time, demanded payment of an alleged student loan in the approximate amount of $7,900.00.

27.     GC Services disguised its telephone number to appear as if the July 1, 2011 call originated from area code 404, the same area code as Ms. Parrish's telephone number.

28.     Ms. Parrish answered GC Services' telephone call because it was disguised as a local telephone number.

29.     Ms. Parrish informed GC Services that she was in the process of moving and would need to call back to discuss setting up payments after her move, to which GC Services replied "I'm required by law to call every two days until the debt is settled."

30.     During the July 1, 2011 telephone call, GC Services further stated, "Since you are married, your husband will be responsible for your debts."

31.     GC Services called Ms. Parrish's cellular telephone on or about July 18, 2011, and at such time, stated "We need a payment" and demanded payments of $167.00 per month.

32.     GC Services disguised its telephone number to appear as if the July 18, 2011 call originated from area code 404, the same area code as Ms. Parrish's telephone number.

33.     Ms. Parrish informed GC Services that she could not afford those payments.

34.     GC Services' agent and/or employee, "Miss Stevenson," called Ms. Parrish's cellular telephone on July 23, 2011, and at such time, demanded Ms. Parrish agree to a payment plan.

35.     Defendant disguised its telephone number to appear as if the July 23, 2011 call originated from area code 404, the same area code as Ms. Parrish's telephone number.

36.     After questioning Ms. Parrish about her personal finances, Miss Stevenson inquired of P Ms. Parrish, "Why do you need to drive such a flashy car?"

37.     Miss Stevenson told Ms. Parrish that GC Services could accept monthly payments of $99.00 per month on the 26th of each month.

38.    When Ms. Parrish asked if the payment day could be changed to the 15th as that was the day her husband was paid, Miss Stevenson responded, "If you don't have the money on the 26th that you had on the 15th, maybe you need to manage your money better."

39.    In response, Ms. Parrish informed Miss Stevenson she was not willing to working with GC Services, but would be willing to work with the creditor.

40.    Despite Ms. Parrish's request to cease communications, GC Services' agent and/or employee "Miss J. Shealy" placed a non-emergency call to Ms. Parrish's cellular telephone on August 12, 2011.

41.    GC Services disguised its telephone number to appear as if the August 12, 2011 call originated from area code 404, the same area code as Ms. Parrish's telephone number.

42.    During the August 12, 2011 telephone call, Ms. Parrish informed Miss J. Shealy that she did not want any further contact with GC Services.

43.    In response, Miss J. Shealy stated, "I'm just trying to work with you to get information to send to the IRS next week."

44.    Miss J. Shealy later informed Ms. Parrish, "I don't want to see you lose your tax return."

45.    Despite Ms. Parrish's request to cease communications, on or about September 1, 2011, Miss J. Shealy placed a non-emergency call to Ms. Parrish's cellular telephone, and at such time, again informed Ms. Parrish that GC Services would be sending information to the IRS next week.

46.     GC Services disguised its telephone number to appear as if the September 1, 2011 call originated from area code 404, the same area code as Ms. Parrish's telephone number.

47.     Miss J. Shealy then threatened Ms. Parrish that she would have the Department of Education get a court order to seize Ms. Parrish's assets unless Ms. Parrish agreed to a payment plan.

48.     Despite Ms. Parrish's request to cease communications, GC Services placed a non-emergency call to Ms. Parrish's cellular telephone on September 8, 2011 at 3:34 P.M., and at such time, disconnected the call when Ms. Parrish answered, thereby failing to disclose GC Services' true corporate or business name to Ms. Parrish.

49.     In its call on September 8, 2011, GC Services further failed to notify Ms. Parrish that the communication was from a debt collector.

50.     On July 22, 2011 at 11:53, GC Services called Ms. Parrish's cellular telephone, and at such time, left the following voicemail message:

> "Hello.  This is for Gina Parrish.  This is Michelle, calling with GC Services.  Please return my call at 877-225-2390 x. 3319. Again that phone number's 877-225-2390 x. 3319.  I will be in the office until 10:00 or 12:00 p.m. eastern standard time.  So, please give a call before then and refer to file number 170891. That number is again 170891.  Thank you."

51.     In its July 22, 2011 voicemail message, GC Services failed to notify Ms. Parrish that the communication was from a debt collector.

52.     GC Service' actions constitute conduct highly offensive to a reasonable person, and as a result of GC Services' behavior, Mr. and Ms. Parrish suffered and continues

to suffer injury to their feelings, personal humiliation, embarrassment, mental aguish and/or emotional distress.

## COUNT I: VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT §§ 1692b(2), 1692c(b) MS. PARRISH

53.     Ms. Parrish repeats and re-alleges each and every allegation contained in paragraphs 1 through 52.

54.     A debt collector violates Section 1692c(b) of the FDCPA by communicating with a third party without the express permission of the consumer.  *See* 15 U.S.C. § 1692c(b).

55.     Section 1692b provides that a debt collector communicating with a third party "for the purpose of acquiring location information about the consumer shall – . . . (2) not state that such consumer owes any debt."  15 U.S.C. § 1692b(2).

56.     Ms. Parrish has never given GC Services express permission to communicate with a third party concerning the alleged debt.

57.     In connection with collection of an alleged debt in default, GC Services called Plaintiff's brother, Timothy R. Hinkle, on multiple occasions in June 2011, in an attempt to obtain location information for Ms. Parrish.

58.     On at least one occasion, GC Services informed Timothy R. Hinkle that GC Services was a debt collector calling in connection with a debt owed by his sister, Ms. Parrish.

59.     In connection with collection of an alleged debt in default, GC Services called Plaintiff's son, Mr. Parrish, on multiple occasions within one year of filing of the Complaint, in an attempt to obtain location information for Ms. Parrish.

60.     On at least one occasion within one year of filing of the Complaint, GC Services informed Mr. Parrish that GC Services was a debt collector calling in connection with a debt owed by his mother, Ms. Parrish.

61.     GC Services conduct violated 15 U.S.C. §§ 1692b(2) and 1692c(b)

62.     GC Financial and DLS are vicariously liable for the acts of GC Services.

WHEREFORE, Ms. Parrish prays for relief and judgment, as follows:

a)  Adjudging that GC Services violated 15 U.S.C. §§ 1692b(2), 1692c(b);

b)  Adjudging that GC Financial and DLS are vicariously liable for the acts of GC Services;

c)  Awarding Ms. Parrish statutory damages, pursuant to 15 U.S.C. §1692k, in the amount of $1,000.00;

d)  Awarding Ms. Parrish actual damages, pursuant to 15 U.S.C. §1692k;

e)  Awarding Ms. Parrish reasonable attorneys' fees ands costs incurred in this action;

f)  Awarding Ms. Parrish any pre-judgment and post-judgment interest as may be allowed under the law; and,

g)  Awarding such other and further relief as the Court may deem just and proper.

## COUNT II: VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT §§ 1692b(3), 1692c(b) MS. PARRISH

63.     Ms. Parrish repeats and re-alleges each and every allegation contained in paragraphs 1 through 52.

64.    A debt collector violates Section 1692c(b) of the FDCPA by communicating with a third party without the express permission of the consumer.  *See* 15 U.S.C. § 1692c(b).

65.    Section 1692b provides that a debt collector communicating with a third party "for the purpose of acquiring location information about the consumer shall – . . . (3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information" 15 U.S.C. § 1692b(3).

66.    Ms. Parrish has never given GC Services express permission to communicate with a third party concerning the alleged debt.

67.    In connection with collection of an alleged debt in default, GC Services called Ms. Parrish's brother, Timothy R. Hinkle, on multiple occasions in June 2011, in an attempt to obtain location information for Ms. Parrish.

68.    In connection with collection of an alleged debt in default, GC Services called Ms. Parrish's son, Mr. Parrish, on multiple occasions within one year of filing of the Complaint, in an attempt to obtain location information for Ms. Parrish.

69.    GC Services conduct violated 15 U.S.C. §§ 1692b(3) and 1692c(b)

70.    GC Financial and DLS are vicariously liable for the acts of GC Services.

WHEREFORE, Ms. Parrish prays for relief and judgment, as follows:

a)  Adjudging that GC Services violated 15 U.S.C. §§ 1692b(3), 1692c(b);

b)  Adjudging that GC Financial and DLS are vicariously liable for the acts of GC Services;

c)  Awarding Ms. Parrish statutory damages, pursuant to 15 U.S.C. §1692k, in the amount of $1,000.00;

d)  Awarding Ms. Parrish actual damages, pursuant to 15 U.S.C. §1692k;

e)  Awarding Ms. Parrish reasonable attorneys' fees ands costs incurred in this action;

f)  Awarding Ms. Parrish any pre-judgment and post-judgment interest as may be allowed under the law; and,

g)  Awarding such other and further relief as the Court may deem just and proper.

### COUNT III: VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT § 1692b(3)
### MR. PARRISH

61.     Mr. Parrish repeats and re-alleges each and every allegation contained in paragraphs 1 through 52.

62.     Section 1692b provides that a debt collector communicating with a third party "for the purpose of acquiring location information about the consumer shall – . . . (3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information." 15 U.S.C. § 1692b(3).

63.     In connection with collection of an alleged debt in default, GC Services called Ms. Parrish's son, Mr. Parrish, on multiple occasions in June 2011, in an attempt to obtain location information for Ms. Parrish.

64.     On at least one occasion, GC Services informed Mr. Parrish that GC Services was a debt collector calling in connection with a debt owed by his mother, Ms. Parrish.

65.     Upon receipt of GC Services' telephone calls, Mr. Parrish informed GC Services that the telephone number no longer belonged to his mother and that it was his cellular telephone number.

66.     Mr. Parrish further informed GC Services that it was to cease contacting his cellular telephone number and demanded GC Services remove the telephone number from any records.

67.     Despite Mr. Parrish's demand to cease contacting him, GC Services continued to contact Mr. Parrish regarding Ms. Parrish's alleged debt.

68.     GC Services conduct violated 15 U.S.C. §§ 1692b(3) and 1692c(b)

69.     GC Financial and DLS are vicariously liable for the acts of GC Services.

WHEREFORE, Mr. Parrish prays for relief and judgment, as follows:

a)   Adjudging that GC Services violated 15 U.S.C. § 1692b(3);

b)   Adjudging that GC Financial and DLS are vicariously liable for the acts of GC Services;

c)   Awarding Mr. Parrish statutory damages, pursuant to 15 U.S.C. §1692k, in the amount of $1,000.00;

d)   Awarding Mr. Parrish actual damages, pursuant to 15 U.S.C. §1692k;

e)   Awarding Mr. Parrish reasonable attorneys' fees ands costs incurred in this action;

f)   Awarding Mr. Parrish any pre-judgment and post-judgment interest as may be allowed under the law; and,

g)   Awarding such other and further relief as the Court may deem just and proper.

### COUNT IV: VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT § 1692d(2)
### MS. PARRISH

70.    Mr. Parrish repeats and re-alleges each and every allegation contained in paragraphs 1 through 52.

71.    A debt collector violates 15 U.S.C. § 1692d(2) by using "obscene or profane language or language the natural consequence of which is to abuse the hearer or reader."

72.    GC Services called Ms. Parrish f's cellular telephone on or about July 1, 2011.

73.    Ms. Parrish informed GC Services that she was in the process of moving and would need to call back to discuss setting up payments after her move, to which GC Services replied "I'm required by law to call every two days until the debt is settled."

74.    During the July 1, 2011 telephone call, GC Services further stated, "Since you are married, your husband will be responsible for your debts."

75.    GC Services called Ms. Parrish's cellular telephone on or about July 18, 2011, and at such time, stated "We need a payment" and demanded payments of $167.00 per month.

76.    GC Services' agent and/or employee, "Miss Stevenson," called Ms. Parrish's cellular telephone on July 23, 2011.

77.    After questioning Ms. Parrish about her personal finances, Miss Stevenson inquired of Ms. Parrish, "Why do you need to drive such a flashy car?"

78.     Miss Stevenson told Ms. Parrish that GC Services could accept monthly payments of $99.00 per month on the 26th of each month.

79.     When Ms. Parrish asked if the payment day could be changed to the 15th as that was the day her husband was paid, Miss Stevenson responded, "If you don't have the money on the 26th that you had on the 15th, maybe you need to manage your money better."

80.     GC Services' agent and/or employee "Miss J. Shealy" placed a non-emergency call to Ms. Parrish's cellular telephone on August 12, 2011.

81.     During the August 12, 2011 telephone call, Ms. Parrish informed Miss J. Shealy that she did not want any further contact with GC Services.

82.     In response, Miss J. Shealy stated, "I'm just trying to work with you to get information to send to the IRS next week."

83.     Miss J. Shealy later informed Ms. Parrish, "I don't want to see you lose your tax return."

84.     On or about September 1, 2011, Miss J. Shealy placed a non-emergency call to Ms. Parrish's cellular telephone, and at such time, again informed Ms. Parrish that GC Services would be sending information to the IRS next week.

85.     Miss J. Shealy then threatened Ms. Parrish that she would have the Department of Education get a court order to seize Ms. Parrish's assets unless Ms. Parrish agreed to a payment plan.

86.     GC Services conduct violated 15 U.S.C. § 1692d(2).

87.     GC Financial and DLS are vicariously liable for the acts of GC Services

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a)  Adjudging that GC Services violated 15 U.S.C. § 1692d(2);

b)  Adjudging that GC Financial and DLS are vicariously liable for the acts of GC Services;

c)  Awarding Ms. Parrish statutory damages, pursuant to 15 U.S.C. §1692k, in the amount of $1,000.00;

d)  Awarding Ms. Parrish actual damages, pursuant to 15 U.S.C. §1692k;

e)  Awarding Ms. Parrish reasonable attorneys' fees ands costs incurred in this action;

f)  Awarding Ms. Parrish any pre-judgment and post-judgment interest as may be allowed under the law; and,

g)  Awarding such other and further relief as the Court may deem just and proper.

## COUNT V: VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT § 1692d(5) MS. PARRISH

88.    Ms. Parrish repeats and re-alleges each and every allegation contained in paragraphs 1 through 52.

89.    A debt collector violates 15 U.S.C. § 1692d(5) by "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

90.    GC Services' agent and/or employee, "Miss Stevenson," called Ms. Parrish's cellular telephone on July 23, 2011.

91.    During the July 23, 2011 telephone call, Ms. Parrish informed Miss Stevenson she was not willing to working with GC Services, but would be willing to work with the

creditor.

92.     Despite Ms. Parrish's request to cease communications, GC Services' agent and/or employee "Miss J. Shealy" placed a non-emergency call to Ms. Parrish's cellular telephone on August 12, 2011.

93.     During the August 12, 2011 telephone call, Ms. Parrish again informed Miss J. Shealy that she did not want any further contact with GC Services.

94.     Despite Ms. Parrish's requests to cease communications, on or about September 1, 2011, Miss J. Shealy placed a non-emergency call to Ms. Parrish's cellular telephone.

95.     Despite Ms. Parrish's request to cease communications, GC Services placed a non-emergency call to Ms. Parrish's cellular telephone on September 8, 2011 at 3:34 P.M., and at such time, disconnected the call when Ms. Parrish answered, thereby failing to disclose GC Services' true corporate or business name to Ms. Parrish.

96.     In its call on September 8, 2011, GC Services further failed to notify Ms. Parrish that the communication was from a debt collector.

97.     GC Services conduct violated 15 U.S.C. § 1692d(5).

98.     GC Financial and DLS are vicariously liable for the acts of GC Services.

WHEREFORE, Ms. Parrish prays for relief and judgment, as follows:

    a)   Adjudging that GC Services violated 15 U.S.C. § 1692d(5);

    b)   Adjudging that GC Financial and DLS are vicariously liable for the acts of GC Services;

c)   Awarding Ms. Parrish statutory damages, pursuant to 15 U.S.C. §1692k, in the amount of $1,000.00;

d)   Awarding Ms. Parrish actual damages, pursuant to 15 U.S.C. §1692k;

e)   Awarding Ms. Parrish reasonable attorneys' fees ands costs incurred in this action;

f)   Awarding Ms. Parrish any pre-judgment and post-judgment interest as may be allowed under the law; and,

g)   Awarding such other and further relief as the Court may deem just and proper.

**COUNT VI: VIOLATION OF FAIR DEBT COLLECTION
PRACTICES ACT § 1692d(5)
MR. PARRISH**

99.    Mr. Parrish repeats and re-alleges each and every allegation contained in paragraphs 1 through 52.

100.    A debt collector violates 15 U.S.C. § 1692d(5) by "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

101.    In connection with collection of an alleged debt in default, GC Services called Ms. Parrish's son, Mr. Parrish, on multiple occasions in June 2011, in an attempt to obtain location information for Ms. Parrish.

102.    On at least one occasion, GC Services informed Mr. Parrish that GC Services was a debt collector calling in connection with a debt owed by his mother, Ms. Parrish.

103.    Upon receipt of GC Services' telephone calls, Mr. Parrish informed GC Services that the telephone number no longer belonged to his mother and that it was his cellular telephone number.

104.    Mr. Parrish further informed GC Services that it was to cease contacting his cellular telephone number and demanded GC Services remove the telephone number from any records.

105.    Despite Mr. Parrish's demand to cease contacting him, GC Services continued to contact Mr. Parrish regarding Ms. Parrish's alleged debt.

106.    Because GC Services was aware that the telephone number it was dialing belonged to Mr. Parrish and not Ms. Parrish, and that Mr. Parrish demanded GC Services cease and desist calling his cellular telephone number, GC Services intentions in continuing to telephone Mr. Parrish were to annoy, abuse, or harass Mr. Parrish.

107.    GC Services conduct violated 15 U.S.C. § 1692d(5).

108.    GC Financial and DLS are vicariously liable for the acts of GC Services.

WHEREFORE, Mr. Parrish prays for relief and judgment, as follows:

   a)   Adjudging that GC Services violated 15 U.S.C. § 1692d(5);

   b)   Adjudging that GC Financial and DLS are vicariously liable for the acts of GC Services;

   c)   Awarding Mr. Parrish statutory damages, pursuant to 15 U.S.C. §1692k, in the amount of $1,000.00;

   d)   Awarding Mr. Parrish actual damages, pursuant to 15 U.S.C. §1692k;

e) Awarding Mr. Parrish reasonable attorneys' fees ands costs incurred in this action;

f) Awarding Mr. Parrish any pre-judgment and post-judgment interest as may be allowed under the law; and,

g) Awarding such other and further relief as the Court may deem just and proper.

### COUNT VII: VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT § 1692e(11)

100.    Ms. Parrish repeats and re-alleges each and every allegation contained in paragraphs 1 through 52.

101.    15 U.S.C. § 1692e(11) provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following Conduct is a violation of this section:
>
> *       *       *
>
> (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692e(11).

102.    Voice mail messages from debt collectors to debtors are "communications" regardless of whether a debt is mentioned in the message. *Berg v. Merchants Assoc. Collection Div., Inc.,* 586 F. Supp. 2d 1336 (S.D. Fla. 2008), *citing Belin v. Litton Loan*

*Servicing, LP,* 2006 WL 1992410 *4 (M.D. Fla. 2006) (holding that messages left on debtor's answering machines were "communications" under the FDCPA); *Hosseinzadeh*, 387 F. Supp. 2d at 1115-16 (holding that a voice mail message is a "communication" under the FDCPA).

103.    Despite Ms. Parrish's request to cease communications, GC Services placed a non-emergency call to Ms. Parrish's cellular telephone on September 8, 2011 at 3:34 P.M., and at such time, disconnected the call when Ms. Parrish answered, thereby failing to disclose GC Services' true corporate or business name to Ms. Parrish.

104.    In its call on September 8, 2011, GC Services further failed to notify Ms. Parrish that the communication was from a debt collector.

105.    On July 22, 2011 at 11:53, GC Services called Ms. Parrish's cellular telephone, and at such time, left the following voicemail message:

> "Hello. This is for Gina Parrish. This is Michelle, calling with GC Services. Please return my call at 877-225-2390 x. 3319. Again that phone number's 877-225-2390 x. 3319. I will be in the office until 10:00 or 12:00 p.m. eastern standard time. So, please give a call before then and refer to file number 170891. That number is again 170891. Thank you."

106.    In its July 22, 2011 voicemail message, GC Services failed to notify Ms. Parrish that the communication was from a debt collector.

107.    GC Services violated 15 U.S.C. § 1692e(11) by failing to disclose during a communication with Ms. Parrish that the communication was from a debt collector.

108.    GC Financial and DLS are vicariously liable for the acts of GC Services.

WHEREFORE, Ms. Parrish prays for relief and judgment, as follows:

a)    Adjudging that GC Services violated 15 U.S.C. § 1692e(11);

b) Adjudging that GC Financial and DLS are vicariously liable for the acts of GC Services;

c) Awarding Ms. Parrish statutory damages, pursuant to 15 U.S.C. §1692k, in the amount of $1,000.00;

d) Awarding Ms. Parrish actual damages, pursuant to 15 U.S.C. §1692k;

e) Awarding Ms. Parrish reasonable attorneys' fees ands costs incurred in this action;

f) Awarding Ms. Parrish any pre-judgment and post-judgment interest as may be allowed under the law; and,

g) Awarding such other and further relief as the Court may deem just and proper.

### COUNT VIII: VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT § 1692d(6)
### MS. PARRISH

109. Ms. Parrish repeats and re-alleges each and every allegation contained in paragraphs 1 through 52.

110. 15 U.S.C. § 1692d(6) provides:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\*        \*        \*

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d(6).

111.    "Meaningful disclosure" requires that the caller state his or her name and capacity, and disclose enough information so as not to mislead the recipient as to the purpose of the call.  *Hosseinzadeh v. M.R.S. Associates, Inc.*, 387 F. Supp. 2d 1104, 1115 (C.D. Cal. 2005); *Costa v. National Action Financial Services,* 634 F. Supp. 2d 1069 (E.D. Cal. 2007).

112.    A debt collector fails to meet the standards prescribed by 15 U.S.C. § 1692d(6) where it fails "to disclose that the caller was a debt collector and that the purpose of the call was to collect a debt."  *Koby v. ARS Nat. Services, Inc*., 2010 WL 1438763 *5 (S.D. Cal. 2010).

113.    "15 U.S.C. 1692d(6) applies 'equally to automated message calls and live calls.'"  *Hosseinzadeh,* 387 F. Supp. 2d at 1115 (C.D. Cal. 2005), citing *Joseph v. J.J. Mac Intyre Cos.*, 238 F. Supp. 2d 1158 (N.D. Cal. 2002).

114.    GC Services called Ms. Parrish's cellular telephone on or about July 1, 2011, and at such time, demanded payment of an alleged student loan in the approximate amount of $7,900.00.

115.    GC Services disguised its telephone number to appear as if the July 1, 2011 call originated from area code 404, the same area code as Ms. Parrish's telephone number.

116.    Ms. Parrish answered GC Services' telephone call because it was disguised as a local telephone number.

117.    GC Services called Ms. Parrish's cellular telephone on or about July 18, 2011, and at such time, stated "We need a payment" and demanded payments of $167.00 per month.

118.    GC Services disguised its telephone number to appear as if the July 18, 2011 call originated from area code 404, the same area code as Ms. Parrish's telephone number.

119.    GC Services' agent and/or employee, "Miss Stevenson," called Ms. Parrish's cellular telephone on July 23, 2011, and at such time, demanded Ms. Parrish agree to a payment plan.

120.    Defendant disguised its telephone number to appear as if the July 23, 2011 call originated from area code 404, the same area code as Ms. Parrish's telephone number.

121.    GC Services' agent and/or employee "Miss J. Shealy" placed a non-emergency call to Ms. Parrish's cellular telephone on August 12, 2011.

122.    GC Services disguised its telephone number to appear as if the August 12, 2011 call originated from area code 404, the same area code as Ms. Parrish's telephone number.

123.    On or about September 1, 2011, Miss J. Shealy placed a non-emergency call to Ms. Parrish's cellular telephone.

124.    GC Services disguised its telephone number to appear as if the September 1, 2011 call originated from area code 404, the same area code as Ms. Parrish's telephone number.

125.    GC Services placed a non-emergency call to Ms. Parrish's cellular telephone on September 8, 2011 at 3:34 P.M., and at such time, disconnected the call when Ms. Parrish answered, thereby failing to disclose GC Services' true corporate or business name to Ms. Parrish.

126.    GC Services' actions constitute violations of 5 U.S.C. § 1692d(6).

127.   GC Financial and DLS are vicariously liable for the acts of GC Services.

WHEREFORE, Ms. Parrish prays for relief and judgment, as follows:

a)   Adjudging that GC Services violated 15 U.S.C. § 1692d(6);

b)   Adjudging that GC Financial and DLS are vicariously liable for the acts of GC Services;

c)   Awarding Ms. Parrish statutory damages, pursuant to 15 U.S.C. §1692k, in the amount of $1,000.00;

d)   Awarding Ms. Parrish actual damages, pursuant to 15 U.S.C. §1692k;

e)   Awarding Ms. Parrish reasonable attorneys' fees ands costs incurred in this action;

f)   Awarding Ms. Parrish any pre-judgment and post-judgment interest as may be allowed under the law; and,

g)   Awarding such other and further relief as the Court may deem just and proper.

### COUNT IX: VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT § 1692e(10)
### MS. PARRISH

128.   Ms. Parrish repeats and re-alleges each and every allegation contained in paragraphs 1 through 52.

129.   15 U.S.C. § 1692e(10) provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\*       \*       \*

> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(10).

130.    The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. §1692e. The sixteen (16) subsections of section 1692e provide a non-exhaustive list of practices that fall within such prohibited conduct.  Provisions similar to those enumerated in section 1692e were present in each of the bills leading up to enactment of the FDCPA.  *See e.g.* H.R. 10191, 94th Cong., 1st Sess. § 804 (1975); H.R. 29, 95th Cong., 1st Sess. § 806 (1977); S. 9th Cong., 1st Sess. § 807 (1977).

131.    A debt collection practice may violate the FDCPA even if it does not fall within specific conduct enumerated by the FDCPA.  *Clomon v. Jackson,* 988 F. 2d 1314, 1318  (2nd Cir. 1993).  Congress, recognizing that it would be impossible to foresee every type of deceptive collection misbehavior, expressly included in the FDCPA a general standard affording courts the ability to proscribe conduct not specifically addressed in section 1692e.  One Senate Report reads:

> [T]his bill prohibits in general terms any harassing unfair or deceptive collection practice.  This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed.

S. Rep. No. 382 at 4; *see also* FTC Official Staff Commentary § 807.

132.    Section 1692e borrows the legal concept of deception from the Federal Trade Commission Act ("FTC Act").  15 U.S.C. § 45; *Jeter v. Credit Bureau, Inc*., 760 F. 2d 1168 (11th Cir. 1985).  Because the FDCPA expressly recognized the inadequacy of existing laws,

including the FTC Act, to protect consumers, the idea of deception encompassed by section 1692e was intended to be more protective of consumers than the law in place at the time the FDCPA was enacted, including the FTC Act.  15 U.S.C. § 1692b; *see also Jeter*, 760 F. 2d 1168.

133.    The proscription of deception developed by the FTC Act, and according decisions of courts discussing the same, is quite broad and approaches a requirement of merchants of honest openness and truthful frankness when dealing with consumers.  Many of the elements of common law fraud are irrelevant to an action for deception under section 1692e.   In particular, there is no requirement that intent to deceive be established.  Knowledge of a statement's falsity is not a necessary element to establish deception.  The fact that a practice is customary does not prevent it from being deceptive.  The "capacity" or "tendency" to deceive is sufficient so that actual deception need not be shown to establish damages.  *Morgan v. Credit Adjustment Board, Inc*., 999 F. Supp. 803 (E.D. Va. 1998).  And, the failure to disclose information is deceptive if necessary qualifications are not made, material information is omitted, or the disclosures made are too inconspicuous.  *See e.g. Simeon Management Corp. v. FTC*., 579 F. 2d 1137 (9th Cir. 1998); *Tashof v. FTC*, 437 F. 2d 707 (D.C. Cir. 1970); *Bice v. Merchants Adjustment Service*, *Clearinghouse,* No. 41,65 (S.D. Ala. 1985)

134.    The materiality of deception may be inferred.  The concept of deception protects even the ignorant, unthinking, and the credulous least sophisticated consumer.  *Jeter*, 760 F. 2d 1168.  Neither truth nor good faith is a defense to a claim of deception.  Literally true statements, partial truths, and ambiguous statements are deceptive if the statement is

subject to an interpretation or contains an implication with the capacity to deceive. *Tashof*, 437 F. 2d 707; *Pope v. Vogel*, 1998 WL 111576 (N.D. Ill. 1998); *Sunshien Art Studios, Inc. v. FTC*, 481 F. 2d 1171 (1st Cir. 1973); *Drennan v. Da Ru Credit Corp.*, 950 F. Supp. 858 (N.D. Ill. 1996).

135.    GC Services violated 15 U.S.C. § 1692e(10) by using false representations and/or deceptive means in connection with collection of an alleged debt from Ms. Parrish, as described above.

136.    GC Financial and DLS are vicariously liable for the acts of GC Services.

WHEREFORE, Ms. Parrish prays for relief and judgment, as follows:

a)    Adjudging that GC Services violated 15 U.S.C. § 1692e(10);

b)    Adjudging that GC Financial and DLS are vicariously liable for the acts of GC Services;

c)    Awarding Ms. Parrish statutory damages, pursuant to 15 U.S.C. §1692k, in the amount of $1,000.00;

d)    Awarding Ms. Parrish actual damages, pursuant to 15 U.S.C. §1692k;

e)    Awarding Ms. Parrish reasonable attorneys' fees ands costs incurred in this action;

f)    Awarding Ms. Parrish any pre-judgment and post-judgment interest as may be allowed under the law; and,

g)    Awarding such other and further relief as the Court may deem just and proper.

## COUNT X: VIOLATION OF FAIR DEBT COLLECTION
## PRACTICES ACT § 1692f
## MS. PARRISH

155.    Ms. Parrish repeats and re-alleges each and every allegation contained in paragraphs 1 through 52.

156.    15 U.S.C. § 1692f provides:

> A debt collector may not use unfair or unconscionable means
> to collect or attempt to collect any debt.

157.    The FDCPA defines neither the term "unconscionable," nor "unfair."

158.    The FDCPA does, however, broadly enumerate several practices considered contrary to its stated purpose, forbidding such action both generally and in a specific list of disapproved practices.

159.    Particular to "unfair or unconscionable means" the FDCPA lists eight specific violations "without limiting the general application" of the statute.  15. U.S.C. § 1692f.

160.    As section 1692f of the FDCPA explicitly states, the listing of the eight specific violations was not intended to limit the applicability of the general prohibition of "unfair or unconscionable" behavior.  *See  McMillan v. Collection Professionals Inc*., 455 F. 3d 754 (7th Cir. 2006).

161.    15 U.S.C. § 1692f "serves a backstop function, catching those "unfair practices" which somehow manage to slip by §§ 1692d & 1692e."  *Edwards v. McCormick*, 136 F. Supp. 2d 795 (S.D. Ohio 2001).

162.    15 U.S.C. § 1692f "allows the court to sanction improper conduct that the FDCPA fails to address specifically." *Adams v. Law Offices of Stuckert & Yates,* 926 F.Supp.

521, 528 (E.D. Pa.1996), citing *Masuda v. Thomas Richards & Co.,* 759 F.Supp. 1456, 1461 n. 10 (C.D. Cal.1991).

163.    GC Services' actions constitute violations of 15 U.S.C. § 1692f.

164.    GC Financial and DLS are vicariously liable for the acts of GC Services.

WHEREFORE, Ms. Parrish prays for relief and judgment, as follows:

a)  Adjudging that GC Services violated 15 U.S.C. § 1692f;

b)  Adjudging that GC Financial and DLS are vicariously liable for the acts of GC Services;

c)  Awarding Ms. Parrish statutory damages, pursuant to 15 U.S.C. §1692k, in the amount of $1,000.00;

d)  Awarding Ms. Parrish actual damages, pursuant to 15 U.S.C. §1692k;

e)  Awarding Ms. Parrish reasonable attorneys' fees ands costs incurred in this action;

f)  Awarding Ms. Parrish any pre-judgment and post-judgment interest as may be allowed under the law; and,

g)  Awarding such other and further relief as the Court may deem just and proper.

### COUNT XI: VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT § 1692e(2)(A) MS. PARRISH

175.    Ms. Parrish repeats and re-alleges each and every allegation contained in paragraphs 1 through 52.

176.    15 U.S.C. § 1692e(2)(a) provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the

collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\*         \*         \*

(2) The false representation of—

(A) The character, amount, or legal status of any debt;

177.    GC Services called Ms. Parrish's cellular telephone on or about July 1, 2011, and at such time, demanded payment of an alleged student loan in the approximate amount of $7,900.00.

178.    During the July 1, 2011 telephone call, GC Services stated, "Since you are married, your husband will be responsible for your debts."

179.    During an August 12, 2011 telephone call, Ms. Parrish informed Miss J. Shealy that she did not want any further contact with GC Services.

180.    In response, Miss J. Shealy stated, "I'm just trying to work with you to get information to send to the IRS next week."

181.    Miss J. Shealy later informed Ms. Parrish, "I don't want to see you lose your tax return."

182.    On or about September 1, 2011, Miss J. Shealy placed a non-emergency call to Ms. Parrish's cellular telephone, and at such time, again informed Ms. Parrish that GC Services would be sending information to the IRS next week.

183.    Miss J. Shealy then threatened Plaintiff that she would have the Department of Education get a court order to seize Ms. Parrish's assets unless Ms. Parrish agreed to a payment plan.

184.    GC Services violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, or legal status of Ms. Parrish's alleged debt.

185.    GC Financial and DLS are vicariously liable for the acts of GC Services.

WHEREFORE, Ms. Parrish prays for relief and judgment, as follows:

a)  Adjudging that GC Services violated 15 U.S.C. § 1692e(2)(A);

b)  Adjudging that GC Financial and DLS are vicariously liable for the acts of GC Services;

c)  Awarding Ms. Parrish statutory damages, pursuant to 15 U.S.C. §1692k, in the amount of $1,000.00;

d)  Awarding Ms. Parrish actual damages, pursuant to 15 U.S.C. §1692k;

e)  Awarding Ms. Parrish reasonable attorneys' fees ands costs incurred in this action;

f)  Awarding Ms. Parrish any pre-judgment and post-judgment interest as may be allowed under the law; and,

g)  Awarding such other and further relief as the Court may deem just and proper.

**COUNT XII: VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT § 227(b)(1)(A)(3) MS. PARRISH**

204.    Ms. Parrish repeats and re-alleges each and every allegation contained in paragraphs 1 through 52.

205.    47 U.S.C. § 227(B)(1)(A)(iii) provides:

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

*       *       *

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

*       *       *

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

47 U.S.C. § 227(B)(1)(A)(iii).

188.    GC Services violated 47 U.S.C. § 227(b)(1)(A)(iii) by willfully and knowingly using an automatic telephone dialing system and/or an artificial or pre-recorded voice to make and/or place non-emergency telephone calls to Ms. Parrish's cellular telephone line absent her prior consent, including but not limited to calls placed on August 12, 2011, September 1, 2011, and September 8, 2011.

189.    GC Financial and DLS are vicariously liable for the acts of GC Services.

WHEREFORE, Ms. Parrish prays for relief and judgment, as follows:

a)  Adjudging that GC Services violated  47 U.S.C. § 227(b)(1)(A)(iii);

b)  Adjudging that GC Financial and DLS are vicariously liable for the acts of GC Services;

c)  Awarding Ms. Parrish statutory damages, pursuant to 47 U.S.C. § 227(b)(3)(B), in the amount of $500.00 per violation;

d)  Awarding Ms. Parrish statutory damages, pursuant to 47 U.S.C. § 227(b)(3)(C), in the amount of $1,500.00 per violation;

e) Awarding Ms. Parrish actual damages, pursuant to 47 U.S.C. § 227(b)(3)(B);

f) Awarding Ms. Parrish reasonable attorneys' fees ands costs incurred in this action;

g) Awarding Ms. Parrish any pre-judgment and post-judgment interest as may be allowed under the law.

### COUNT XIII: VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT § 227(b)(1)(A)(3) MR. PARRISH

190.    Mr. Parrish repeats and re-alleges each and every allegation contained in paragraphs 1 through 52.

> 47 U.S.C. § 227(B)(1)(A)(iii) provides:
> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> *        *        *
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> *        *        *
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

47 U.S.C. § 227(B)(1)(A)(iii).

191.    GC Services violated 47 U.S.C. § 227(b)(1)(A)(iii) by, on at least one occasion, willfully and knowingly using an automatic telephone dialing system and/or an

artificial or pre-recorded voice to make and/or place non-emergency telephone calls to Mr.

Parrish's cellular telephone line absent his prior consent.

192. GC Financial and DLS are vicariously liable for the acts of GC Services.

WHEREFORE, Mr. Parrish prays for relief and judgment, as follows:

a) Adjudging that GC Services violated 47 U.S.C. § 227(b)(1)(A)(iii);

b) Adjudging that GC Financial and DLS are vicariously liable for the acts of GC Services;

c) Awarding Mr. Parrish statutory damages, pursuant to 47 U.S.C. § 227(b)(3)(B), in the amount of $500.00 per violation;

d) Awarding Mr. Parrish statutory damages, pursuant to 47 U.S.C. § 227(b)(3)(C), in the amount of $1,500.00 per violation;

e) Awarding Mr. Parrish actual damages, pursuant to 47 U.S.C. § 227(b)(3)(B);

f) Awarding Mr. Parrish reasonable attorneys' fees ands costs incurred in this action;

g) Awarding Mr. Parrish any pre-judgment and post-judgment interest as may be allowed under the law.

**TRIAL BY JURY**

193.    Mr. and Ms. Parrish are entitled to and hereby demands a trial by jury on all counts.

DATED this 23rd day of December, 2011.

Respectfully submitted,

/s/ Holly E. Dowd
Holly E. Dowd (S.C. Bar No. 77897)
Weisberg & Meyers, LLC
409A Wakefield Dr.
Charlotte, NC 28209
(888) 595-9111 ext. 260
(866) 565-1327 (fax)
hdowd@attorneysforconsumers.com

ATTORNEYS FOR PLAINTIFF

*Please send correspondence to the address below*

Holly E. Dowd
*Weisberg & Meyers, LLC*
5025 N. Central Ave. #602
Phoenix, AZ 85012